PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY R. COX, JR., | ) | |
| | ) | CASE NO. 4:14cv229 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| SCREENINGONE, INC., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 17; 20] |

Pending before the Court is Defendant ScreeningOne, Inc.'s Motion to Dismiss and

Compel Arbitration pursuant to Fed. R. Civ. P. 12(b)(6) and 9 U.S.C. §§ 3 and 4.  ECF No. 17.

The Court has been advised, having reviewed the record, including the parties' briefs and the

applicable law.  For the reasons provided below, the Court denies Defendant's Motion.

## I.  Factual and Procedural History

Plaintiff Anthony R. Cox, Jr. applied for employment with non-party VXI Global

Solutions ("VXI") on January 25, 2012.  ECF No. 14 ¶ 9.  VXI screened all applicants through

the use of consumer reports obtained from Defendant ScreeningOne, Inc ("ScreeningOne").  Id. ¶

10.  ScreeningOne provided VXI with Cox's consumer report, based in part upon information

that Cox had provided to ScreeningOne.  ECF No. 17-2 ¶ 5.  ScreeningOne's report showed a

match for a felony criminal conviction for an Anthony Cox in Fairbanks, Alaska.  Id. ¶ 5.  Cox,

however, has never been convicted of a crime.  ECF No. 14 ¶ 11.  Cox also alleges that the

records on which ScreeningOne relied to create Cox's consumer report reflect that Cox and the

(4:14cv229)

felon do not share a middle name.  *Id.* ¶ 13.  Cox contacted ScreeningOne to dispute the report on

January 30, 2012.  ECF No. 17-2 ¶ 6.  Within 72 hours, ScreeningOne reinvestigated Cox's

consumer report and sent a corrected report to VXI.  *Id.* ¶ 7.  VXI hired Cox on or around

February 6, 2012.  ECF No. 17-3 at 10.  Cox, however, did not remain employed by VXI for

long.  Cox last showed up for work at VXI on May 27, 2012 and had received six performance-

related write-ups during his period of employment with the company.  *Id.* at 11 ¶ 7 (affidavit of

Pamela Hill, Human Resources Manager at VXI).  One year later, Cox faxed a written request to

ScreeningOne "to ensure that his file had not been corrupted once again."  ECF No. 14 ¶ 21.

Cox alleges that it took ScreeningOne over two months to release Cox's consumer report to him.

*Id.* ¶ 22.

   Separate from this instant litigation, Cox brought a lawsuit against VXI for various

alleged violations of the Fair Credit Reporting Act (FCRA).  ECF No. 17-1.  VXI moved to

dismiss the case and compel arbitration pursuant to the Arbitration Agreement that Cox had

signed before he began his employment with VXI.  ECF No. 17-3.  The Arbitration Agreement

provides, in pertinent part:

> The Company and I agree to resolve, by arbitration, all claims or controversies . . .
> involving the Company . . . whether or not those claims or controversies arise out
> of my employment with the Company or the termination of my employment
> ("Claims").  The Claims covered by this Agreement include, but are not limited to
> . . . claims for violation of any federal, state or governmental law . . . ."

*Id.* at 13.  Cox eventually dismissed his lawsuit against VXI.  ECF No. 17-4.

   Cox filed this instant lawsuit on February 3, 2014.  ECF No. 1.  The Complaint alleged

two causes of action: a class claim alleging violations of 15 U.S.C. § 1681k(a)(1); and an

(4:14cv229)

individual claim alleging a violation of 15 U.S.C. § 1681e(b).  Cox later filed, with leave from the Court, an Amended Complaint that alleged four causes of action: a class claim alleging violations of 15 U.S.C. § 1681g(a); a class claim alleging violations of 15 U.S.C. 1681i(a)(1); a class claim alleging violations of 15 U.S.C. § 1681k(a)(1); and an individual claim alleging a violation of 15 U.S.C. § 1681e(b).  ECF No. 14.  Thereafter, ScreeningOne moved to dismiss Cox's Amended Complaint.  ECF No. 17.  Cox opposed ScreeningOne's motion.  ECF No. 18.  ScreeningOne replied.  ECF No. 19.  The matter is ripe for adjudication.

## II.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  It also must "state a claim that is plausible on its face." *Id*. at 570.  Upon reviewing a motion to dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).  Claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)).  The factual allegations in the complaint "must contain something more . . . than . . . merely creat[ing] a suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555–56 (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, p. 235–236 (3d ed. 2004)).  In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public

3

(4:14cv229)

records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.  Discussion

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*, manifests "a liberal federal policy favoring arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (quoting *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Section 3 of the FAA requires courts "on application of one of the parties" to "stay the trial of the action until such arbitration has been" conducted in accordance with the terms of the arbitration agreement.  9 U.S.C. § 3.  Section 4 requires courts to "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement"—provided that the "making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  Courts have the authority to dismiss rather than stay cases in which all claims asserted may be referred to arbitration.  *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir.2009).  The Sixth Circuit applies a four-prong test to determine whether courts should grant the motion to dismiss or stay proceedings and compel arbitration:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin.*

4

(4:14cv229)

*Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Cox contends that he has not agreed to arbitrate claims against ScreeningOne.  A party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  In limited circumstances, however, "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir.1990)).  The Sixth Circuit recognizes five distinct theories for binding non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.  *Id.* (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)).  ScreeningOne argues that the last of these theories—estoppel—applies to the instant matter.

"[A] signatory may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Javitch*, 315 F.3d at 629.  Courts within the Sixth Circuit rely upon the test articulated in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) to determine whether a non-signatory may bind a signatory to arbitration under the theory of equitable estoppel.  *E.g.*, *Liedtke v. Frank*, 437 F. Supp. 2d 696, 699 (N.D. Ohio 2006); *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 752 (S.D. Ohio 2002); *Wise v. Zwicker & Associates, PC*, 2013 WL 1195555, at *7 (N.D. Ohio Mar. 22, 2013); *Simpson v. LifeNet, Inc.*, 2010 WL 86328, at *2 (E.D. Mich. Jan. 5, 2010); *Eaves-Leanos v. Assurant, Inc.*, 2008 WL 1805394, at *3 (W.D. Ky. Apr. 21, 2008). *MS Dealer* held that equitable estoppel applies in two circumstances:

5

(4:14cv229)

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory.  When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate [] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . .  when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*MS Dealer*, 177 F.3d at 947 (internal citations omitted).  The rationale for the doctrine of equitable estoppel is fairness.  *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 528 (5th Cir. 2000).  As another unit of the Court observed:

> The rationale behind *Grigson* for estopping a signatory from avoiding arbitration against a non-signatory is that a signatory cannot 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement . . . but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.  Moreover . . . it would be especially inequitable where . . . a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant.  In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding.

*Wise*, 2013 WL 1195555 at *8 (quoting *Grigson*, 210 F.3d at 528) (internal citations and quotation marks omitted).

ScreeningOne cannot show that Cox's FCRA claims rely on the terms of the written agreement or that the claims raise allegations of substantially interdependent and concerted misconduct.  Cox's allegations against ScreeningOne exist independent of any obligation under the Arbitration Agreement.  VXI's Arbitration Agreement covered all claims that Cox may have asserted against VXI.  ECF No. 17-3 at 13.  The claims against ScreeningOne, however, "assert that [ScreeningOne] is liable pursuant to federal and state law, not pursuant to any duties

6

(4:14cv229)

imposed by the Agreement." *See Wise*, 2013 WL 1195555 at *8; *see also Lenox MacLaren*

*Surgical Corp. V. Medtronic, Inc.*, 449 Fed. App'x 704, 710 (10th Cir. 2011) ("For a plaintiff's

claims to rely on the contract containing the arbitration provision, the contract must form the

legal basis of those claims; it is not enough that the contract is factually significant to plaintiff's

claims or has a 'but-for' relationship with them.").  While it is true that ScreeningOne furnished

Cox's consumer report to VXI in connection with an employment opportunity that would

ultimately be subject to an arbitration agreement, it does not follow that ScreeningOne's duties

under the FCRA rely on, make reference to, or presume the existence of the Arbitration

Agreement between VXI and Cox.  A consumer reporting agency[1] like ScreeningOne has broader

obligations than to furnish consumer reports to employers that prefer to arbitrate disputes with its

employees.  The FCRA contemplates that a consumer report may be furnished for any number of

reasons other than those connected to employment.  *See* 15 U.S.C. § 1681b(a) (listing persons to

whom and for what purposes a consumer reporting agency may furnish a consumer report).  The

Court cannot conclude that claims alleging violations of federal law rely upon the underlying

written agreement merely because ScreeningOne's obligations under the FCRA had been

triggered by Cox applying for the position that the written agreement governed.

Likewise, Cox has not alleged ScreeningOne and VXI have acted in concert to violate the

FCRA.  Courts within the Sixth Circuit have found liability under *MS Dealer*'s second ground

---

[1] "The term 'consumer reporting agency' means any person which, for monetary fees,
dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of
assembling or evaluating consumer credit information or other information on consumers for the
purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

(4:14cv229)

for equitable estoppel only in cases in which the plaintiff has alleged that the signatory and non-signatory defendant engaged in "concerted misconduct."  *See Liedtke v. Frank*, 437 F. Supp. 2d 696, 700 (N.D. Ohio 2006) ("Plaintiff's dismissal of Household does not change the fact that the conduct of Frank and the Javitch firm relates to a debt that arose from the Household cardholder agreement and that the collection by "credit strangulation" is alleged to have been a joint enterprise with Household."); *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 753 (S.D. Ohio 2002) ("In her Complaint, Plaintiff has alleged concerted conduct by KRI and KRIC, and she has sought to hold KRIC jointly and severally liable for all of the conduct of KRI, including the alleged discrimination, harassment, retaliation, and breach of contract."); *Simpson v. LifeNet, Inc.*, 2010 WL 86328, at *1 (E.D. Mich. Jan. 5, 2010) ("The instant Plaintiff . . . is bringing an action against the non-signatory, LifeNet, for actions taken in concert with the non-defendant signatory, MMR. Plaintiff's original Saginaw County Cause of Action against MMR is virtually identical to the instant action against LifeNet."); *Eaves-Leanos v. Assurant, Inc.*, 2008 WL 1805394, at *4 (W.D. Ky. Apr. 21, 2008) ("Eaves-Leanos argues that the Insurers "partnered" with Citibank and Bank of America to "market, solicit, and sell" their insurance products and that Citibank and Bank of America acted as the Insurers' "agents" in conducting such activities.").  The mere existence of a signatory non-defendant with whom plaintiff has entered into an arbitration agreement is insufficient to justify equitable estoppel.  *Wise*, 2013 WL 1195555 at *8 ("[P]laintiff does not allege any interdependent or concerted misconduct whatsoever between defendants and American Express. All of his allegations are strictly confined to defendants.").

8

(4:14cv229)

It is true that Cox's Amended Complaint refers to actions taken by VXI.  Notably, however, the Amended Complaint does not allege that VXI engaged in concerted misconduct with ScreeningOne to violate the FCRA.  Rather, the extent of VXI's involvement in the instant matter is that Cox applied for a position with VXI (ECF No. 14 ¶ 9); that VXI procured a consumer report prepared by ScreeningOne (*Id.* ¶ 10); and that VXI acted upon the allegedly erroneous report at first, but later hired Cox after the report had been corrected.  *Id.* ¶¶ 17, 20. The Amended Complaint does not allege that VXI contributed to ScreeningOne's alleged failure to "provide a complete copy of the consumer's file within 15 days of the consumer's request." *See id.* ¶ 38.  Likewise, Cox does not allege that VXI acted in concert with ScreeningOne in failing to reinvestigate Cox's dispute of his consumer report (*see id.* ¶ 42), to notify Cox that adverse information had been reported to an employer (*see id.* ¶ 46), or to maintain procedures to ensure accuracy of consumer reports (*see id.* ¶ 49).  Instead, Cox's Amended Complaint asserts that ScreeningOne acted alone to allegedly violate provisions of the FCRA.

ScreeningOne argues that "Cox has brought claims against non-signatory ScreeningOne for actions taken in concert with the non-defendant signatory, VXI" because "Plaintiff's class action FCRA claims against both VXI and ScreeningOne arose out of the same exact facts." ECF No. 17 at 9.  This argument does not affect the Court's conclusion, absent an allegation that VXI and ScreeningOne acted in concert to commit separate FCRA violations.  "The FCRA imposes distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies."  *Nelski v. Trans Union, LLC*, 86 Fed. App'x 840, 844 (6th Cir. 2004).  Moreover, entities can

9

(4:14cv229)

independently violate the FCRA within their "different spheres of liability" regardless of whether another entity adheres to its own obligations under the FCRA. *Boatner v. Choicepoint Workplace Solutions, Inc.*, 2010 WL 1838727, at *3 (D. Or. May 6, 2010). VXI—a user of credit reports—can violate its duty under 15 U.S.C. § 1681b(b)(2)(A) to "clear[ly] and conspicuous[ly] disclos[e] . . . that a consumer report may be obtained for employment purposes" independent of whether ScreeningOne—a consumer reporting agency—violates its duty under 15 U.S.C. § 1681e(b) to "follow reasonable procedures to assure maximum possible accuracy" of the furnished consumer report, and *vice versa*. The fact that VXI and ScreeningOne allegedly committed legally distinct violations of the FCRA that arose from the same background facts does not justify applying equitable estoppel in this case.

Furthermore, neither of the concerns discussed in *Grigson* are present in this case. Federal law, not the Arbitration Agreement, imposes obligations on ScreeningOne. The federal statutes under which ScreeningOne may be liable do not relate to any right Cox enjoyed under the Arbitration Agreement while Cox worked for VXI. Cox is not trying to "have it both ways." Rather, Cox seeks relief in a non-arbitration setting for violations of duties that exist independent of the arbitration agreement. Moreover, the FCRA violations that Cox alleges ScreeningOne committed are those that can only be committed by a consumer reporting agency. *See* 15 U.S.C. § 1681g(a) (requiring a consumer reporting agency to furnish an accurate report upon request); *id.* § 1681i(a)(1) (requiring a consumer reporting agency to "conduct a reasonable investigation" into whether the disputed information contained in the report is accurate); *id.* § 1681k(a)(1) (requiring a consumer reporting agency to notify the subject of a consumer report of adverse

10

(4:14cv229)

effects the report will have on employment decisions); *id.* § 1681e(b) (requiring a consumer

reporting agency to maintain reasonable procedures to ensure reports are accurate).  ECF No. 14.

ScreeningOne admits that it falls within the FCRA's definition of a consumer reporting agency.

ECF No. 15 ¶ 8.  No similar allegation has been made as to VXI.  As it now stands, VXI will not

be required as a party to this proceeding.

  Cox has successfully demonstrated that his claims against ScreeningOne are unsuitable

for arbitration because Cox has not agreed to arbitrate his FCRA claims with ScreeningOne.  *See*

*Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91.  Moreover, ScreeningOne has failed to establish

that Cox should be estopped from avoiding arbitration in the instant matter.  Accordingly, the

Court denies ScreeningOne's Motion to Dismiss and Compel Arbitration.

## IV.  Conclusion

  For the forgoing reasons, ScreeningOne's Motion to Dismiss and Compel Arbitration

(ECF No. 17) is denied.

  In anticipation of the ruling on this case, the parties have sought an overly generous

enlargement of the case management plan.  ECF No. 20.  The motion is granted in part.  The new

dates follow.

  Fact discovery cutoff: March 31, 2015

  Motion for class certification: April 10, 2015

  Brief in opposition: April 24, 2015

  Reply brief: May 1, 2015

  Dispositive motion cutoff: June 30, 2015

11

(4:14cv229)

Opposition to dispositive motions: July 30, 2015

Reply brief: August 13, 2015

IT IS SO ORDERED.


  January 30, 2015                              /s/ Benita Y. Pearson
Date                                         Benita Y. Pearson
                                             United States District Judge

12